IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Clifton Roy Wilson,                    )    Civil Action No.  8:15-cv-04185-MGL-JDA
                                       )
                    Plaintiff,         )
                                       )
        vs.                            )    **REPORT AND RECOMMENDATION**
                                       )    **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for

supplemental security income ("SSI")[2].  For the reasons set forth below, it is recommended

that the decision of the Commissioner be reversed and remanded for administrative action

consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

        On March 24, 2010, Plaintiff filed an application for supplemental security income

("SSI"), alleging an onset of disability date of January 1, 2007.  [R. 179–85.]  The claim was

denied initially and upon reconsideration.  [R. 75–78.]   Thereafter, the claimant filed a

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."

written request for hearing and, on October 6, 2011, he appeared with an attorney and testified at a hearing before Administrative Law Judge ("ALJ") Edward T. Morriss. [R. 58–74.] A supplemental hearing was held before the same ALJ on March 15, 2012. [R. 33–57.]

The ALJ issued a decision on April 12, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 8–32.] Plaintiff requested Appeals Council review of the ALJ's decision, and on October 23, 2012, the Appeals Council declined. [R. 1–7.] On December 21, 2012, Plaintiff filed an action for judicial review in this Court, and this Court remanded the case to the ALJ for further administrative action. [*See Wilson v. Colvin*, C/A No. 8:12-3627-MGL-JDA (D.S.C. June 17, 2014), ECF No. 28; R. 883–84.] Plaintiff also filed a subsequent claim for benefits on November 26, 2012, which the ALJ was directed to consolidate into a single record and to consolidate with the pending claims. [R. 781, 917.]

Upon remand on March 12, 2015, Plaintiff appeared and testified at a hearing before the same ALJ. [R. 810–50.] On August 4, 2015, the ALJ issued his decision finding that Plaintiff had not been under a disability, as defined in the Act, since March 24, 2010, the date of the application was filed. [R. 781–809.] At Step 1[3], the ALJ found Plaintiff had not engaged in substantial gainful activity since March 24, 2010, the application date. [R. 783, Finding 1.] At Step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease status post cervical fusion in 2008, bipolar disorder, and avascular necrosis of the right shoulder status post surgery. [R. 784, Finding

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2.] The ALJ also found that Plaintiff had non-severe impairments of knee pain, hypothyroidism and possible migraines. [*Id*.]

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. [R. 784, Finding 3.] Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is limited to frequent balancing. He is unable to climb ladders, ropes, or scaffolds. The claimant is limited to occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs. He is limited to occasional overhead reaching with both upper extremities. The claimant is further limited to understanding, remembering, and carrying out simple instructions and limited to no ongoing public interaction.

[R. 787, Finding 4.] Based on record before him, at Step 4, the ALJ determined Plaintiff had no past relevant work. [R. 800, Finding 5.] In light of Plaintiff's age, marginal education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform based on testimony from a vocational expert. [R. 800, Finding 9.] Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, since March 24, 2010, the date the application was filed. [R. 801, Finding 10.] Plaintiff commenced an action for judicial review in this Court on October 9, 2015. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ committed reversible error because the ALJ improperly disregarded treating source opinions as to Plaintiff's ability to function in a work environment, and he also failed to provide an RFC supported by substantial evidence. [Doc. 17.]

The Commissioner contends the decision is supported by substantial evidence, specifically arguing that the ALJ gave appropriate weight to the treating source opinions of record, and he also provided sufficient reasons to support the RFC that Plaintiff was capable of light work. [Doc. 19.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

6

may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g., Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is

---

2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without

10

considering the claimant's age, education, and work experience.[5]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]    20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

---

affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made

13

conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

**IV.    Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative

14

examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

15

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

16

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Source Opinions and Residual Functional Capacity**

Plaintiff challenges the ALJ's decision as flawed alleging that the ALJ: (1) failed to give proper weight to the opinions and findings of Dr. Peter J. Sukin ("Dr. Sukin"), Plaintiff's treating psychiatrist, Dr. Cashton B. Spivey ("Dr. Spivey") regarding Plaintiff's mental limitations, and Dr. Peter Naylor ("Dr. Naylor") regarding Plaintiff's mental limitations [Doc. 17 at 19–22]; and (2) failed to properly determine Plaintiff's RFC by failing to account for the side effects of Plaintiff's medications on his ability to work and failing to make proper credibility determinations [*id*. at 22–24].   Upon review, the Court agrees with Plaintiff.

### Relevant Medical History

#### *Dr. Sukin*

Plaintiff was seen by Dr. Sukin for an initial evaluation on April 13, 2010.  [R. 407.] While the notes are difficult to read, it appears Dr. Sukin reviewed Plaintiff's family history, medications, conducted a mental status exam and diagnosed Plaintiff with possibly having OCD and/or ADHD. [*Id*.]  Plaintiff saw Dr. Sukin again on August 4, 2010, September 2, 2010, and November 2, 2010.[8]  [R. 457, 530–32.]

On January 3, 2011, Dr. Sukin wrote a letter stating that he was treating Plaintiff for severe bi-polar disorder and that he remains grossly unstable and his medications were being adjusted.  [R. 533.]  Dr. Sukin opined that Plaintiff suffered from severe mood swings and that, at times, he was very depressed, irritable and agitated, and that Plaintiff was very isolated and did not function very well outside of the home.  [*Id*.] Dr. Sukin noted that

---

[8]Again, the treatment notes are very hard to read.

Plaintiff was very fragile and extremely overwhelmed and that he was clearly not capable of work and was clearly disabled.  [*Id*.]

Dr. Sukin continued seeing Plaintiff in March 2011, April 2011, May, 2011, June, 2011, July 2011, and August 2011.[9]   [R. 667–70.] On August 22, 2011, Dr. Sukin completed an SSA form titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" on behalf of Plaintiff indicating as follows:

- Plaintiff was moderately restricted in his ability to

    - understand and remember simple instructions
    - carry out simple instructions
    - make judgments on simple work-related decisions

- Plaintiff was extremely restricted in his ability to

    - understand and remember complex instructions
    - carry out complex instructions
    - make judgements on complex work-related decisions

[R. 681.]   Dr. Sukin indicated that Plaintiff suffered from severe mood swings and, therefore, work was impossible due to poor focus and concentration, and slow cognitive function.  [*Id*.] Dr. Sukin indicated that there are capabilities affected by his impairments, but Dr. Sukin's writing is illegible.  [*Id*.]  Dr. Sukin opined that Plaintiff's limitations had existed since at least April 13, 2010; additional notations by Dr. Sukin, however, are illegible.  [*Id*.]  Dr. Sukin also indicated that Plaintiff would be able to manage benefits in his best interest.  [R. 683.]

On February 14, 2012, Dr. Sukin wrote another letter "To Whom It May Concern," indicating that he was Plaintiff's treating psychiatrist and was treating Plaintiff for a number

---

[9]Again, Dr. Sukin's treatment notes are largely illegible.

of problems including Bipolar Disorder and ADHD.  [R. 726.]  Dr. Sukin reported that Plaintiff was very easily overwhelmed and frustrated; struggled to focus, concentrate, and stay on task; and had moods that, at times, still cycle.  [*Id.*]  According to Dr. Sukin, Plaintiff's diagnosis met DSMIV criteria.  [*Id.*]  Dr. Sukin requested that Plaintiff have extended time due to poor focus and concentration; frequent breaks; a private room for distractability; extra time, and use of a computer.  [*Id.*]

On March 11, 2012, Dr. Sukin completed an SSA form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" on behalf of Plaintiff. [R. 762–64.]  Dr. Sukin noted Plaintiff's impairments or restrictions related to mental activities as follows:

- Plaintiff had *Marked* limitations in his ability to:

  - understand and remember simple instructions
  - carry out simple instructions

- Plaintiff had *Extreme* limitations in his ability to:

  - make judgments on simple work-related decisions
  - understand and remember complex instructions
  - carry out complex instructions
  - make judgments on complex work related decisions

[R. 762.]  Dr. Sukin based his assessment on Plaintiff's lack of interaction with anyone other than his mother; his being extremely withdrawn; and his inability to deal with the stresses of communication.  [*Id.*]  Dr. Sukin also opined that Plaintiff was *extremely* limited in his ability to:

  - interact appropriately with the public
  - interact appropriately with supervisors
  - interact appropriately with co-workers

20

- respond appropriately to usual work situations and to changes in a routine work setting

[R. 763.] Dr. Sukin assessed these limitations based on Plaintiff's inability to interact with anyone without getting very easily agitated. [*Id*.] Dr. Sukin also opined that Plaintiff could not focus or concentrate, and that he was fragile and easily overwhelmed. [*Id*.] Dr. Sukin indicated that these limitations had existed since at least April 13, 2010, and that he would not be able to manage benefits in his own interest. [R. 763–64.]

### Dr. Spivey

Plaintiff presented to Dr. Spivey on November 5, 2010, on referral by the South Carolina Vocational Rehabilitation Department, Disability Determination Division, for a consultative exam to include a clinical interview and a mini-mental state exam. [*See* R. 473–76.] Plaintiff was referred for an assessment in order to evaluate his cognitive, personality, and emotional functioning, and to aid in determining his eligibility for disability benefits. [R. 473.]

Plaintiff reported having had two ACL left knee surgeries; cervical spine surgery with current pain in the spine and lumbar regions; and a right knee injury that had not been surgically repaired. [*Id*.] Plaintiff also reported diagnosis of bipolar disorder, ADHD, OCD, memory deficits, and visual focus problems. [*Id*.] With respect to his education, Plaintiff reported discontinuing his education in the seventh grade; had not obtained his GED; and was unemployed. [*Id*.] Plaintiff also reported his current medication regimen to include Depakote, Clonidine, Lipitor, and Klonopin. [*Id*.] He also reported taking Seroquel and Abilify. [*Id*.] He reported having headaches and memory deficits, but no seizures. [*Id*.]

21

Regarding his psychiatric history, Plaintiff reported being hospitalized as a child for aggressive behavior and that he currently received his psycotropic medication from a psychiatrist. [R. 474.] During the evaluation, Plaintiff reported feelings of depression; sleep disturbance with difficulty falling asleep; low energy level; attention/concentration problems; and fluctuating feelings of anxiety and ruminations. [*Id.*] Plaintiff also reported being arrested for pointing a firearm, placed on probation, and required to participate in anger management classes. [*Id.*] Dr. Spivey noted that Plaintiff was capable of bathing and dressing independently, could use the microwave, and operated an automobile on a very infrequent basis. [*Id.*] Plaintiff's mother managed his finances and he performed no household duties or chores, but watched television in his leisure time. [*Id.*]

Dr. Spivey noted that Plaintiff was cooperative and compliant during the evaluation session. [*Id.*] Dr. Spivey made the following findings during his exam and noted that Plaintiff was:

- unable to perform serial 7's
- able to spell "world" backwards
- able to recall one of three objects at five minutes suggesting possible mild impairment in his short-term auditory memory functioning
- had intact language skills
- able to follow a three-step command
- unable to accurately reproduce a drawing

[R. 475.] Dr. Spivey also noted that Plaintiff demonstrated a satisfactory general fund of information and fair abstract reasoning abilities, fair insight, and fair judgment. [*Id.*] Dr. Spivey estimated that Plaintiff's general intelligence score would likely fall in the low average range. [*Id.*] During the evaluation, Plaintiff's mood was mildly sad and his affect was slightly blunted; his thought processes were logical and coherent; his attention was

fair; his concentration was fair to poor; his speech was of normal rate and rhythm; he engaged in minimal eye contact; and his psychomotor functioning was within normal limits. [*Id*.]

Dr. Spivey opined that, as a result of Plaintiff's evaluation, he met the criteria for the following diagnoses: bipolar disorder, depressed phase by history; attention deficit hyperactvity disorder, inattentive type by history; anxiety disorder, not otherwise specified; and ruled out obsessive compulsive disorder. [R. 475.] Dr. Spivey noted that Plaintiff's GAF score was 50 at the time, but had been a 55 over the past 12 months. [*Id*.] And, based on his inability to perform serial 7's, suggesting deficits in his calculation abilities, Dr. Spivey indicated that it would be difficult for Plaintiff to manage funds independently and accurately. [*Id*.]

### Dr. Naylor

Plaintiff saw Dr. Naylor with Charleston Psychiatry on July 10, 2009, on follow up for a diagnosis of mood disorder, not otherwise specified. [R. 387.] Plaintiff reported he "still has anger," his mother was stressful, calling him non-stop, but that he was tolerating his psychiatric medications well. [*Id*.] Dr. Naylor noted on mental status exam that Plaintiff's mood was irritable, his affect appropriate to content, and that he was not a danger to self or others. [*Id*.] Dr. Naylor continued him on Depakote, Effexor, Prozac and Hydrocodone, but added Seroquel and Klonopin. [*Id*.] Plaintiff was advised to follow up in five weeks and was referred for individual psychotherapy and given a list of counselors. [*Id*.]

On November 9, 2014, Dr. Naylor completed a fill in the blank/check box form with respect to Plaintiff. [R. 1024–25.] He stated that he had been seeing Plaintiff since March 2, 2009. [R. 1024.]  The following is a summary of Dr. Naylor's responses in response to the following question: "Does [Plaintiff] suffer from a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, including:"

    __      A.      Medically documented persistence, either continuous or intermittent, of one of the follow:

            ✓     1.      Depressive syndrome characterized by at least *four* of the following:

                      ✔     a.      Anhedonia or pervasive loss of interest in almost all activities; or
                      ✔     b.      Appetite disturbance with change in weight; or
                      ✔     c.      Sleep disturbance; or
                      ✔     d.      Psychomotor agitation or retardation; or
                      ✔     e.      Decreased energy, or
                      __     f.      Feelings of guilt or worthlessness; or
                      ✔     g.      Difficulty concentrating or thinking; or
                      __     h.      Thoughts of suicide; or
                      ✔     i.      Hallucinations, delusions or paranoid thinking

OR

            __     2.      Manic syndrome characterized by at least *three* of the following:

                      ✔     a.      Hyperactivity; or
                      __     b.      Pressure of speech; or
                      ✔     c.      Flight of ideas; or
                      __     d.      Inflated Self-esteem; or
                      __     e.      Decreased need for sleep; or
                      ✔     f.      Easy distractability; or
                      __     g.      Involvement in activities that have high probability of painful consequences which are not recognized; or
                      ✔     h.      Hallucinations, delusions or paranoid thinking

OR

___ 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

___ B. Resulting in at least two of the following:

    ___ 1. Marked restriction of activities of daily living;
    ✔ 2. Marked difficulties in maintaining social functioning;
    ✔ 3. Deficiencies of concentration, persistence or pace; or
    ✔ 4. Repeated episodes of decompensation, each of extended duration

OR

___ C. Medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    ___ 1. Repeated episodes of decompensation, each of extended duration; or
    ✔ 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    ✔ 3. Current history of 1 or more years' in ability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[R. 1024–1025.] Dr. Spivey opined that Plaintiff's condition had existed since March 2010. [R. 1025.]

### Other Medical Evidence of Record Related to Mental Health

Michael Neboschick, PhD. ("Dr. Neboschick") conducted a Psychiatric Review Technique ("PRT") on December 16, 2010, with respect to Listings 12.02, 12.04 and 12.06. [R. 510–26.] Dr. Neboschick found that Plaintiff had mild limitations in restrictions of activities of daily living and difficulties in maintaining social functioning; moderate

restrictions in difficulties in concentration, persistence and pace; and no episodes of

decompensation.  [R. 520.]   Dr. Neboschick also completed a Mental RFC on behalf of

Plaintiff finding him to be:

> *Not significantly limited in his ability to:*
>
> - remember locations and work-like procedures
> - understand and remember very short and simple instructions
> - carry out very short and simple instructions
> - perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances
> - sustain an ordinary routine without special supervision
> - work in coordination with or proximity to others without being distracted by them
> - make simple work-related decisions
> - ask simple questions or request assistance
> - accept instruction and respond appropriately to criticism from supervisors
> - get along with coworkers or peers without distracting them or exhibiting behavioral extremes
> - maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness
> - ability to be aware of normal hazards and take appropriate precautions
> - travel in unfamiliar places or use public transportation
> - set realistic goals or make plans independently of others
>
> *Moderately limited in his ability to:*
>
> - understand and remember detailed instructions
> - carry out detailed instructions
> - maintain attention and concentration for extended periods
> - complete a normal work-day or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
> - interact appropriately with the general public
> - respond appropriately to changes in the work setting

[R. 524–25.]

On June 20, 2012, Dr. Pascale Marsdikian ("Dr. Marsdikian"), a psychiatrist with

Tricounty Behavioral Health, completed an SSA form entitled "Medical Source Statement

of Ability To Do Work-Related Activities (Mental)."  [R. 1019–21.]  Dr. Marsdikian opined

that Plaintiff had:

> *Moderate limitations in his ability to:*
>
> •     understand and remember simple instructions
> •     carry out simple instructions
> •     make judgments on simple work-related decisions
> •     interact appropriately with the public
>
> *Marked limitations in his ability to:*
>
> •     understand and remember complex instructions
> •     carry out complex instructions
> •     make judgements on complex work-related decisions
> •     interact appropriately with supervisors
> •     interact appropriately with coworkers
> •     respond appropriately to usual work situations and to changes in a routine
>         work setting

[R. 1019–20.]  Dr. Marsdikian opined that Plaintiff was unable to work due to mood

instability, agitation, decreased concentration, and sedation due to medication at times.

[R. 1020.]

**ALJ's Weighing of Treating Physician Opinions**

Plaintiff specifically challenges the ALJ's weighing of the opinions of Drs. Sukin,

Spivey, and Naylor.  The ALJ's reasoning for the weight assigned to Dr. Sukin's opinions

was as follows:

> The specific limitations contained in Dr. Sukin's opinions have
> been accorded little weight, as they are not supported by the
> routine and conservative nature of his treatment of the
> claimant and are inconsistent with multiple mental status
> examinations documented in the medical record.  At times, his
> conclusions are contradicted in his own treatment notes.  In
> July 2010, an otolaryngologist noted that the claimant was very
> pleasant, oriented, alert, and responsive, which is inconsistent
> with Dr. Sukin's opinion regarding the claimant's inability to
> interact with others, although he was noted to be agitated,

27

angry, suspicious and rude during an October 2010 primary care appointment (Exhibit 30F). Dr. Sukin's January 2011 opinion that the claimant's mental condition was grossly unstable is specifically contradicted in contemporaneous January 2011 Medical University of South Carolina treatment notes, which assess the claimant's bipolar disorder and anxiety as stable on the medication regimen as titrated by the claimant's psychiatrist (Exhibit 30F). In February 2011, the claimant had a normal mood and was cooperative and interactive (Exhibit 30F). Additionally, Dr. Sukin indicated that the claimant's mood was stable in June 2011 (Exhibit 34F). The claimant's reports to Dr. Sukin in November 2011, December 2011, January 2012, and February 2012 reflect generally mild symptoms and do not support Dr. Sukin's opinions that the claimant continued to experience severely disabling mental symptoms throughout his course of treatment (Exhibit 42F). Dr. Sukin's March 2012 opinion describing the claimant's extreme mental symptoms is contradicted by March 2012 and April 2012 primary care treatment notes documenting that he was alert and reflecting no psychiatric abnormalities (Exhibit 48F). I acknowledge that the claimant's primary care treatment providers were not conducting detailed mental status examinations, but note that some mention of psychiatric symptoms would be expected if the claimant's symptoms were as extreme as Dr. Sukin reported. At the hearings, the claimant interacted well and responded appropriately to all questions that were asked, which is also inconsistent with Dr. Sukin's assertion that the claimant's ability to interact with anyone but his mother is extremely limited. Overall, Dr. Sukin's opinions have very little, if any, support in the treatment record. I have therefore accorded them little weight and find that the restrictions to understanding, remembering, and carrying out simple instructions and no ongoing public interaction are appropriate to account for the claimant's mental symptoms, to the extent that they are supported by the evidence as a whole.

[R. 797.]

With respect to Dr. Spivey's opinion, the ALJ explained:

. . . This assessment of serious impairment is inconsistent with Dr. Spivey's fairly benign clinical findings and the conservative routine mental health treatment documented in the medical evidence of record. Additionally, this evaluation was based on

28

one encounter with the claimant and relied largely on the claimant's subjective reports. I have therefore accorded little weight to Dr. Spivey's GAF score.

[R. 794–95.]

With respect to Dr. Naylor's opinion, the ALJ explained:

> . . . I note that the medical evidence of record reflects that Dr. Naylor treated the claimant through July 2009, but he was treated by Dr. Sukin from April 2010 through February 2012, and returned to Dr. Naylor from February 2014 through May 2015. Therefore, it does not appear that Dr. Naylor has first-hand knowledge of the claimant's condition from March 2010 through February 2014. Further, if the claimant's symptoms were consistently as severe as Dr. Naylor described, one would expect that he would have required inpatient or emergency mental health treatment at some point during the last 5 years. Although the claimant's medications have been adjusted on multiple occasions, his mental health treatment has been generally routine and conservative. Mental status examinations by Dr. Naylor, Dr. Sukin, and other treating physicians have generally documented mild and no more than moderate mental clinical findings and fail to support the extreme limitations Dr. Naylor describes in this opinion. Although Dr. Naylor is a treating psychiatrist, his opinion is not supported by objective evidence or clinical findings and is therefore accorded little weight.

[R. 797–98.]

## Discussion

With respect to medical opinions of record regarding Plaintiff's impairments and limitations, the ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing

20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a 'treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may

30

> determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairment or impairments meets or equals a listing, or the claimant has a

certain residual functional capacity).

Upon review of the ALJ's decision, it appears that the ALJ either adopted or gave

great weight to the following limitations based on Plaintiff's mental health:

- understanding, remembering and carrying out simple instructions based on consultative exam by Dr. David W. Robinson in December 2010 [R. 792]; based on Dr. Spivey's clinical finding that Plaintiff's concentration was fair to poor, and he suffers from mild short term auditory memory [R. 795]; based on Dr. Sukin's opinions which were accorded little weight [R. 797]; and to account for the sedating side effects of Plaintiff's medications, as well as limitations to frequent balancing, no climbing ladders, ropes or scaffolds [R. 799].

- understanding and remembering simple instructions; sustain attention for simple, structured tasks for periods of 2 hours segments; adapt to changes which would be best if they were infrequent and gradually introduced; make simple work-related decisions; maintain appropriate appearances and hygiene; recognize and appropriately respond to hazards; work in the presence of others; accept supervision; and work best in situations that did not involve extensive direct communications with the public based on a State Agency psychological consultant's exam in December 2010 which the ALJ gave "great weight" finding it consistent with the objective clinical findings documented in the medical evidence of record [R. 795].

- no ongoing public interaction due to the effects of his ongoing irritability on his social functioning in light of treatment records from Dr. Sukin and Dr. Naylor [R. 794].

31

- no ongoing public interaction based on Dr. Sukin's opinions which were accorded little weight [R. 797].

The Court finds troubling that the ALJ disregarded opinions of Plaintiff's treating psychiatrists regarding the nature and severity of his unstable mood swings, affecting his ability to interact with co-workers and supervisors, based not on medical findings or lab results but on a few treatment notes indicating that at the time of a particular office visit, Plaintiff was stable, cooperative or compliant.  The nature of a condition being unstable would appear to imply that the condition would be stable at certain times as well.  To completely ignore the instability associated with Plaintiff's condition, which is clearly documented in the medial history, based on a few indications that Plaintiff did not appear to be suffering from instability at a particular point in time required the ALJ to substitute his expertise that he did not possess in the field of psychiatric medicine for the opinion of an examining physician regarding Plaintiff's functional limitations.  This action by the ALJ constitutes error.  *See Vowels v. Colvin*, C/A No. 8:14-1138-DCN, 2015 WL 5546701, at *3 (D.S.C. Sept. 18, 2015) (explaining that an ALJ may not substitute expertise he did not possess in medicine for the opinion of an examining physician that was uncontradicted); *Gallman v. Colvin*, C/A No. 5:12–2979-DCN, 2014 WL 658002, at *8 (D.S.C. Feb.19, 2014) (finding that ALJ was not "free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject he is not qualified to render," and noting that the ALJ "offered little explanation" for his conclusions as to the expert's opinion and did not discuss any medical evidence that conflicted with the opinion).

Under the regulations, the opinion of the treating physician is entitled to controlling weight if it is not inconsistent with other substantial evidence in the case record.  The ALJ

failed to give the opinions of Plaintiff's treating physicians controlling weight, and also failed to detailed the "other substantial evidence" in the case record with which it was inconsistent.  Specifically, Plaintiff's treating physicians opined as to numerous limitations caused by Plaintiff's mental impairments, including an extreme limitation in his ability to interact with the public, supervisors and co-workers.  [*See, e.g.*, R. 763.]  The ALJ appears to have given these limitations little weight again based on the fact that Plaintiff, at times, was stable, cooperative or compliant.  Such a finding, without substantial contradictory evidence, is inconsistent with the Commissioner's own regulations.  In addition, testimony from Plaintiff's mother also corroborated the limitations caused by Plaintiff's mental impairments. [*See* R. 843–45.]  As a result, the Court is unable to find the ALJ's weighing of the treating physician opinions with respect to Plaintiff's mental impairments to be supported by substantial evidence.

Further, when discussing Plaintiff's mental limitations the ALJ appears to have rejected several treating physician opinions related to the severity of Plaintiff's mental limitations based on the ALJ's belief that Plaintiff's treatment was "conservative."  But, the ALJ failed to address the number of medications Plaintiff was taking, as well as the number of times his medications had to be changed due to their apparent ineffectiveness.  *See Johnson v. Colvin*, No. ED CV 13–1476–JSL(E), 2014 WL 2586886, at *5 (C.D. Cal. Jun. 7, 2014) (finding that an ALJ erred in characterizing as "conservative" claimant's treatment with psycotropic medications, and collecting cases), *adopted by* 2014 WL 2589777.  The fact that Plaintiff did not require hospitalization does not necessarily mean that his treatment was conservative and, thus, not indicative of a lack of severity.  Because "[m]any potentially disabling conditions can be treated by routine and conservative treatment," the

33

characterization of treatment as conservative "alone does not provide any insight into the severity of a given condition and may even belie the condition's seriousness." *Viverette v. Astrue*, No. 5:07-cv-395-FL, 2008 WL 5087419, at *2 (E.D.N.C. Nov. 24, 2008).

Additionally, as explained in *Matthews v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012),

> Evidence of conservative treatment, such as over-the-counter medication, can be sufficient to discount a claimant's allegations of disability. . . . Here, however, Plaintiff has been taking psychotropic medication and receiving outpatient care since 2005. Claimant does not have to undergo inpatient hospitalization to be disabled. Indeed, the Ninth Circuit has criticized the use of lack of treatment to reject mental complaints, both because mental illness is notoriously under-reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.

*See also Mason v. Colvin*, No. 1:12-cv-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (treatment not "conservative" where claimant took prescription antidepressants and anti-psychotic medication for almost two years to treat depression, anxiety, and hallucinations, and, though not hospitalized during this time, received mental health treatment by a psychiatrist and a psychiatric social worker for a 14 month period).

In the instant case, similar to *Mason*, Plaintiff had been on psycotropic medications since at least 2010 and had been receiving mental health treatment by a psychiatrist during the same period of time. The fact that he had not been hospitalized by his treating physicians for his mental impairments does not necessarily equate to a finding that his treatment was conservative.

This Court acknowledges that the Fourth Circuit Court of Appeals "has long held it is appropriate for the ALJ to consider the conservative nature of a plaintiff's

34

treatment—among other factors—in judging the credibility of the plaintiff." *Dunn v. Colvin*, 607 F. App'x 264 (4th Cir. 2015) (emphasizing that when making a credibility determination it is proper to consider the conservative treatment of the claimant; and noting that conservative treatment alone does not equate to the denial of disability benefits). In contrast to *Dunn*, the ALJ in the instant case apparently did not determine that Plaintiff's credibility was lessened because he received conservative mental health treatment. Instead, the ALJ seemed to outright reject treating physician opinions related to Plaintiff's mental limitations because the ALJ believed Plaintiff's treatment was conservative. This is not in accordance with *Dunn*, and it violates the Treating Physician Rule.

Furthermore, the Court takes note of the fact that the ALJ gave great weight to the findings of a State Agency psychological consultant, who found that Plaintiff could only sustain attention for simple, structured tasks for periods of 2 hours segments, and could adapt to changes but that it would be best if the changes were infrequent and gradually introduced. [R. 795.] This finding by the State Agency consultant, given great weight by the ALJ, appears to be consistent with the findings by Plaintiff's treating physicians that Plaintiff had problems with focus, concentration, was fragile and easily overwhelmed, [Dr. Sukin, R. 763–64]; Plaintiff's attention was fair, but his concentration was fair-to-poor [Dr. Spivey, R. 745]; and Plaintiff had deficiencies of concentration, persistence or pace [Dr. Naylor, R. 1025]. It is unclear to the Court how these limitations were accounted for in the RFC, which is reversible error.

The ALJ consulted the vocational expert about limitations related to being unable to understand, remember and carry out simple instructions on an unscheduled basis, 1–2 hours a day; and about the loss of ability to respond appropriately to supervision and co-

35

workers, to which the VE responded that there would be no jobs. [R. 848–49.] The limitations regarding Plaintiff's ability to perform tasks in 2-hour increments and the need for gradually introduced changes, both given great weight by the ALJ, however, were not presented to the vocational expert for consideration and there is no indication by the ALJ as to how these limitations were accounted for in the RFC.  *See Bailey v. Colvin*, C/A No. 5:14-0248-DCN, 2015 WL 2449044, at *13 (D.S.C. May 21, 2015) (adopting the Report and Recommendation that found "[h]ere, although the ALJ's RFC finding was appropriate based on the consultants' opinion as to his ability to *perform simple tasks*, the ALJ's RFC does not account for Plaintiff's limitations in concentration, persistence, or pace as to his ability to *stay on task*.)

As stated above, a district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir.1998).   In this instance, the Court finds the ALJ's reasoning specious and lacking of support in the medical evidence of record.  Accordingly, remand is appropriate.

**Remaining Allegations of Error**

The Court has found that the ALJ's failure to properly weigh the opinions of Plaintiff's treating physicians and adequately determine the RFC is a proper basis for remand.  And, on remand the ALJ is directed to consider Plaintiff's remaining allegations of error.  Additionally, on remand the ALJ is directed to present all of Plaintiff's credible

limitations to the vocational expert to determine the availability of work in the national economy in accordance with *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge

October 19, 2016
Greenville, South Carolina